The next case on our docket for oral argument is the case of Leanne Albers v. Paul Revere Insurance Group. Those lawyers, please come forward. Mr. Reilly, when you're ready, you may come forward and state your appearance. Good morning. May it please the Court, my name is Bill Reilly and I'm appearing on behalf of the appellant, Leanne Albers. I would like to reserve five minutes for rebuttal. This case is governed by this Court's decision in 2004 in Hangartner v. Paul Revere Insurance Company. That case had the same insurers, the same policy, the same unreasonable and unlawful basis for the denial and the same result that a lawsuit needed to be filed to obtain benefits that were rightfully owed to the plaintiff. Actually, I don't know if the same basis for denial existed there. So in your case, I understand that the reason for the dispute here is the teaching that she did that was considered to be work in a different occupation. In Hangartner, the dispute was about whether the person could have worked in their own occupation. And there really wasn't an allegation, as I understand it, that the person was working in a different occupation at all. Actually, Your Honor, if you review the Hangartner decision, it states that they denied her claim because she was working as an office manager within her chiropractic practice. But they treat that as minimal activities of her occupation, don't they? And that's why they say in the footnote that the part about working in another occupation doesn't matter, that that was left out. It doesn't matter because she wasn't working in it anyway. Ultimately, you know, even if that is a difference between the two cases, the underlying laws stated in Hangartner, which Paul Revere was a party to and certainly knew about, applies to this case. So, counsel, I have a related question. And I agree the policy language, at least in Hangartner, is obviously identical here. But I have a question about California law, which is different than the way we interpreted California law. So as I read Erica and Moore and other California cases, they are generally talking about policies that talk about a person's capacity to work. This policy talks about you are not actually engaged in any other gainful employment, as opposed to you are unable to engage, as opposed to you are engaged. Are you aware of any California case that deals specifically with that language that we have here, you are not engaged in any other gainful employment? Well, I would argue Hangartner. No, I'm asking you, are you aware of any California state case that deals with a policy with the language about you are not engaged, as opposed to you are not capable of working? I am not. Okay, thank you. But the insurers here acknowledged that the California definition of total disability applied to this claim. And importantly, that definition includes the requirement that the individual be able to maintain their station in life. And there's a lot of California law about maintaining your station in life. And it's not even a close call that if you're earning less than 20% of what you previously earned, you cannot maintain your station in life. Counsel, I think you're referring perhaps to the January 22, 2021 letter that the insurer sent your client where they talk about as a result of direction from the California Department of Insurance. Is the direction from the California Department of Insurance in the record anywhere? It is not. So could I ask, are you saying that under California law or Hangartner, I don't know how to say that case, the entire second provision that says you can't be involved in any other gainful occupation is just nonexistent really? I believe that's an appropriate interpretation of Hangartner and the application. But we don't even need to get there because Ms. Albers never had a gainful occupation. So just to understand though, are you saying that if she worked full time as an elementary school teacher, definitely a different occupation than her dental hygiene, full time as an elementary school teacher and made the same salary as she made doing dental hygiene, that she would still have qualified as totally disabled because she couldn't do her own occupation? I mean, I think you can make that argument based on Hangartner, but we don't need to make that argument here because it just wasn't gainful. So can I just pause for a second? If Hangartner actually said that, do you think it's consistent with California law or did we misinterpret? Well, this is an occupational policy, and so if you can't complete the material duties of your occupation, then you're entitled to your benefits. There are other policies that are not occupational policies. But counsel, following up on Judge Freeland's question, that's not – I mean, maybe California law would say you can't put this in a policy, but what the policy says is you are not engaged in any other gainful occupation. And if one looked at the dictionary definition of engaged in, it strikes me that what your client was doing was being engaged in a gainful occupation. I think I agree with you on what Hangartner said, but I can't find anything in California law. We're bound by, I think, Hangartner, but I can't find anything in California law which says on a provision like this, gainful occupation means the same as what Erica said in what I think is a different context. Well, so gainful occupation, it's not a defined term in the policy expressly. But if you drill down into the policy's terms, they say if you make less than 20% of your original income, that your income is considered to be zero under the policy. And so if you read the policy as a whole, there's no way that zero income would amount to gainful. And then the next step is contra-preferendum, which says that if there's ambiguity in the contract, it's construed against the drafters. I mean, just to me, if – I mean, and Hangartner even said the policy doesn't look ambiguous to us, but we think this is what California law requires. And to me, the term gainful occupation is just not all that ambiguous. And to me, if I were construing it up in the first instance, I would have a hard time with your argument as to teaching at the college wasn't gainful. Well, then you go back to station life and the amount of money that she was making. And was it sufficient to maintain her station in life, which is a basic premise of the definition of total disability under California law? So I understood that aspect of California law as basically saying, you know, if you've been trained as a doctor and you are a doctor and we're asking whether you can work as a doctor, we're not going to ask whether you can do stocking shelves or something very different than kind of what you prepared for in your life. That still goes to the, like, whether you could do your occupation prong of this policy, I think. Why does it go to this question of whether she was doing a gainful other occupation? Well, I would contend that there's multiple elements of what's an acceptable job under the California total disability definition as, you know, described by Erica and Moore. And education, training, and experience, those are all independent requirements in addition to station life. And so, you know, station life is not repetitive of education, training, and experience. It's a new independent category. Council, did you ever argue below that the insurer is stopped from offering a different definition of gainful occupation given their letter of January 22nd, 2021?  You know, I think the insurers always agreed that that definition controlled. Oh, sorry. I guess I'm just trying to figure out because what amounts to a total disability is often a question of fact. So do you think we can answer this question or do we need to remand it to the district court to determine whether she's totally disabled and whether she could reasonably expect it to perform? Well, I think you can based on Hangartner. I think we can do what? You can make a finding that she was disabled based on the application of Hangartner. But certainly beyond that, it's absolutely an issue of fact and that it should absolutely be remanded at minimum. But I would love to get a ruling from this court that says that Hangartner applies and here's what it means. So you would want us to say that under California law, the definition of gainful occupation is what's in that January 22nd, 2021 letter? Well, in part and more importantly, I'd want you to say that Hangartner in the Ninth Circuit's prior ruling in 2004 controls and that case said that you can just read gainful out of a occupational policy. So you had a different suggestion of an estoppel argument in footnote 11 in your brief where you talked about the 1991 letter that Plaintiff received that suggested that she would still count as disabled even if she worked. Did you argue that in the district court? Absolutely, we argued it. Can you point to where? Where you made the argument that they should be estopped from this whole theory because of that letter? Or did you use it some other way? I'm not certain that we specifically said they should be estopped, but we raised it and said that if appropriate, you know, estoppel and waiver, if it was appropriate, it should have applied to them as to, you know, their response to her inquiries about what does gainful occupation mean. And did you point to this letter in saying that they should be estopped? I don't know if we ever used the word estopped, but we certainly pointed it out and said that it was more appropriate to require them to honor the terms of their prior communications with Ms. Albers than to apply some estoppel argument against her. If you could point to where that happened in the district court, it would be helpful to me, maybe on rebuttal. Yeah, I'll take a look. Thank you. Do you want to reserve the balance of your time? I still have a couple more minutes. But then you'll run out of all of your time. Oh. Is that right? Yeah, that's your rebuttal time. Yeah, you're well into your rebuttal time. Yeah, thank you. Uh-huh. Counsel, Mr. McGuire, do you want to state your appearance? Good morning, Your Honors. May it please the Court, I'm Dan McGuire, representing the appellees Paul Revere and Unum Leif. The appellant's lawsuit sought to revive an issue she had raised, considered, and renounced over a dozen years before, whether she was totally disabled, under her Paul Revere policy in 2008 and earlier, based on the same facts that she knew then, that she was not eligible for total disability because she was employed in another gainful occupation. Instead, she was residually disabled, and she was paid as such for the next 12 years. Whether her lawsuit is barred by the statute of limitations, waiver, estoppel, or all three, or whether it fails under the plain language of the policy, the result is the same, and we would ask the Court to affirm the lower court's judgment. Well, let me start with the plain language of the policy. The way I read Hangardner is, especially in footnote 3 and the discussion around footnote 3, the policy language is identical. And it looks to me like we held, although the instruction eliminated the policy's requirement that Hangardner not be engaged in any other gainful occupation, that appears proper under California law, even if the policy language seems unambiguous. How would we as a three-judge panel be able to disregard that? And even if you were going to characterize it as dicta, and I'm not sure that it is dicta, but even if you were to characterize it as dicta, wouldn't we also have to find that it wasn't reasoned dicta to disregard it as another three-judge panel? I disagree respectfully with Your Honor. We have the same policy. That's absolutely correct. However, we have a different issue here than we had in Hangardner. In Hangardner, the issue was a factual one, whether or not Hangardner was disabled from performing the duties of her occupation under the definition of disability as it's been promulgated by the courts, including Erica. Here, we don't have that issue. Nobody is disputing that Ms. Albers is unable to be a dental hygienist. The issue is completely different. It's whether or not her new occupation, after she chose to change careers, would be gainful. I understand your argument about why the issues are supposedly different from here in Hangardner, but our language that I read to you, even if the issues have a difference, the language seems to go to exactly the issue we are dealing with here. Tell me why I'm wrong as to why the language I read from footnote three doesn't control the exact issue here if we were to decide we had to follow it. Because, Your Honor, it was dicta in that case and for the reasons I just described. So even in that context, the court in Hangardner said it seems unambiguous to us. So even if it's not dicta, I don't think it's binding or persuasive. I read the court as saying it seems unambiguous, but that's California law and we can't apply it because California law doesn't allow it in a policy. California law, Your Honor, does allow in the policy the definition of disability that's stated in part one of our definition. Part two was not addressed in Hangardner, the gainful occupation piece of this. I am aware of no California case that's ever been decided saying that that language is somehow improper. So, Counsel, that was a question I asked your friend. And so a question, a related question, I have two questions for you. The first one is your January 22, 2021 letter specifically gives an entirely different definition of gainful occupation than the one you're advancing now, right? No, Your Honor, it's not. The gainful occupation is not specifically defined in the policy. So we have to look to other sources. My question is, doesn't your letter say as a result of direction from California Department of Insurance, here is what gainful occupation means? And it uses the exact quote from Erica. Your Honor, it does say reason what should be reasonably expected to perform given your age, education, training, experience, station in life, physical and mental capacity. Because that's what the Department of Insurance has instructed us to say. As to this gainful employment, when it's in a prong about whether you're actually engaged in other gainful employment. I'm sorry, Your Honor, I missed the first part of that question. Sorry. So the California Department of Insurance has said that if you are applying a requirement of a policy that the person not be engaged in another gainful occupation, that the way to define gainful occupation is this? Yes, Your Honor, that's what it says in the letter. And that's what the Department of Insurance told the company. Do they cite anything for that? There's nothing cited in the letter. There was no discovery on the issue. That's the only evidence in the record on that issue. Is this California Department of Insurance? Is it a regulation that we can look up? No, Your Honor, it's not. As far as I know. So what was the direction that you got from them? I don't really understand what this is talking about on ER 209. Apparently, Your Honor, the company was receiving some input from the Department of Insurance regarding several provisions of the policy, this among them. Do you think we would benefit from certifying a question to the California Supreme Court as to whether the provision that is in your policy is controlled by ERICA and more, or whether it is lawful to put in with its common meaning? No, Your Honor, I don't think that would be helpful for this reason. First, the policy is unambiguous on its face. Second, we already know that no court has determined that it's improper. Third, we know that the Hangar Court, which looked at it, determined that it seemed unambiguous to them. And fourth, the Department of Insurance has told us what it means. So for those four reasons, and I don't know whether the Department of Insurance is entitled to Chevron deference in this scenario or not, but for those four reasons, we don't think that would be helpful. So you think the definition given by the Department of Insurance that you quoted on ER209 helps you? Yes, Your Honor, it does. And the reason is because we're talking about a lot of things for gainful occupation, age, education, training, experience, station in life, physical and mental capacity. So we know that Ms. Albers was uniquely qualified to teach dental hygiene. She was a hygienist. She obtained a bachelor's degree, taught at a college, which improved her station in life. My friend seems to suggest that station in life is restricted to an analysis of how much money she took home. But it's not, particularly here when the amount of money that she was taking home was controlled by Ms. Albers herself. We see from the record in the quotes I gave and the citations in our brief that this subject of how much she could earn while not compromising or diminishing her residual disability benefits was the subject of successive conversations over the period of decades. But so can I ask you about this? Because it seems like your interpretation of the contract means that if she had never worked at all, she would be entitled to total disability benefits up to 65 and for the rest of her life. But because she chose to save you money by working a little bit and so you could pay her 20 percent less, she's penalized and now is way worse off. How does that make any sense as an interpretation of a policy? Well, the first point, Your Honor, I agree with, which is that under this policy language, she had a choice. A young woman, history of dental hygiene, she's a professor of dental hygiene. She could have stayed home and done nothing and collected full total disability benefits so long as she was disabled before the age of 55, wasn't subject to that reduction. Which she was, right. She was, right. So she could have stayed home, done nothing and collected full benefits. So the question Your Honor asks is really a practical one, which is, you know, what advantage is it to have somebody continue as a productive member of society and pursue a change in careers? And the change in careers is a matter of personal accomplishment. It's a matter of giving back to the community. It's a matter of doing something else with your life instead of just sitting around and doing nothing. So the result, though, is that she's going to make $400, $500 a month versus $6,000 a month for the rest of her life. That's true, Your Honor, although, I'm sorry. I'm not quite sure. So you think the answer that you gave right now makes sense? I do, Your Honor, and she earned that money teaching. But do you think she understood? Do you think she understood that if she did this 20% time teaching, it meant that she was going to lose, I mean, I haven't done a calculation, but potentially like half a million dollars or a million dollars for the rest of her life after 65? Well, she said she understood the policy, and I think that's what we have to go with. So she had two opportunities to pursue a total disability claim. In 2008 and 2009, she not only didn't do it despite two invitations, but she specifically renounced it twice. So, counsel, let's assume for the moment that we didn't agree with you as to the district court getting it right on the statute of limitations or the other areas, and we were then proceeding to this issue of gainful occupation. You don't think that at this stage of the proceedings that the plaintiff would be entitled, even under the definition on ER 209, to have a trier of fact determine whether she was engaged in a gainful occupation, given like the eight different terms there, including one, that station in life that one would think a jury could look at in many different ways? You don't think there, even in the abstract, is a triable issue of fact if that were the definition? No, Your Honor, because there's no evidence that's submitted in the record upon which the plaintiff could rely in generating a triable issue of fact. All that information, the factual information, is memorialized in that claim file. That's the written word. There's no declarations. There's no deposition testimony. There's no contrary evidence whatsoever, Your Honor. And so the district court was well within its discretion to make a determination based on those facts. When did Paul Revere first classify Ms. Albers as residually disabled? In 1991, Your Honor. Not 1993? Oh, I'm sorry. I misspoke. 1993. Because the record seems to have conflicting information about when Ms. Albers was first classified as residually disabled. Some of the record suggests this began in 1983, and other parts suggest she became residually disabled in 1998. And I'm just wondering, does that matter?  Because the issue here is whether or not she was totally disabled in 2008. Before 2020. Yeah, before 2020. Okay. Thank you. So can I ask you about the letter at ER 130? Yes, Your Honor. Can you explain to me why this letter isn't misleading? It seems to me like a reasonable reading of it could be that if you return to work, it won't affect whether you're totally disabled. Thank you, Your Honor. I agree that the content of this letter is incomplete in the first part. I don't necessarily think it's inaccurate. But I think the point here is that we know, based on the course of conduct and communications that was after that, that there was no reliance on it. And there's no power to amend the policy, for one thing, as a matter of contract law. Number two, there was a further exchange, and I would invite the Court's attention to supplemental excerpts, pages 69 and 71. The issue came up again in 1999 regarding the impact. Sorry, can I just pause you? So this says, if you are able to return to work in another occupation, you will still be considered totally disabled for your occupation and eligible to receive benefits. Can you quote something in one of these other pages you're telling me that shows that that was, like, clearly taken back by your client? Or fixed? Clarified? I would invite the Court's attention on that issue to SER 71, which is a letter from Paul Revere to Ms. Albers, which, in the third paragraph, states in part, if you are considering returning to work on a part-time basis, your policy benefits would be based upon a loss of earned income. But that doesn't say that you would not get your benefits after age 65 for the rest of your life. No, the policy says that, Your Honor. So how does she – you know, she doesn't have counsel. She even said that in one of the phone – you know, she didn't have counsel with her in these communications, as she said in one of the phone calls. So how do we know that that – she can understand that, look at the policy, piece it together, and figure out that this thing that you told her very specifically in 1991 was wrong? In 2008, Your Honor, to answer your question, we have a series of communications between the company and Ms. Albers. During those communications, Ms. Albers stated that she first thought that residual benefits were payable for life. And we told her, no, that was not true. And so we invited her to submit information suggesting why she was totally disabled, because when we told her that residual wasn't payable for life, she changed the story and said that, well, I'm really totally disabled. So that set us down the path that we described in the briefing. We invited her to submit a claim for total disability. I understand all of that, but that's not really saying where you told her that if she works, she's not going to be able to get lifetime benefits. Well, that's in the policy. And we don't have any statement that says you can't get lifetime benefits if you are – oh, I'm sorry, I confused myself. You're not going to get lifetime benefits unless you're totally disabled. But the policy says that. Go ahead. Could I ask whether this case has attempted mediation? Is there any chance that this case could settle? Because it seems like there's a lot of room for some agreement here. Yes, Your Honor. To answer your question, we mediated this case twice, first at the district court level using a private mediator, and second through the Ninth Circuit mediation program. Thank you very much. I apologize for running over. Thank you for your attention. Thank you. Good morning. So on the gainful issue, Ms. Alvers repeatedly asked them what the definition of gainful was. Counsel, I'm sorry, could you move a little closer to the mic or move the mic a little closer to you? Sure, sure, sure. Sorry, I apologize. Repeatedly asked the insurers what's the definition of gainful. They never provided it. The regulations require them to do that. They require them to communicate, and they didn't do it. So I just wanted to say that. And then as to instructions from the California Department of Insurance, we made a request for judicial notice. And if you look at that request in the stipulation and waiver, it's regarding a different insurer. It's a life insurance company of North America, but it's regarding disability policies. And it says, as part of it, LINA, that's the insurer, affirms it processes, its process of considering in its disability evaluation the claimant's station in life when evaluating any occupation period. In evaluating a level of earnings that is commiserate with the claimant's station in life, LINA will determine that the appropriate level of earnings as per its policy requirements or where the policy is silent, LINA will consider 80 percent to be appropriate commiserate level of earnings. That's a pretty clear direction from the California Department of Insurance about what is appropriate for station in life.  It says evaluation in considering in its disability evaluation the claimant's station in life. Oh, because you kept saying maintain, and I didn't recall seeing maintain in the definition. I'm sorry if I misquoted. No, that's okay. I just wanted to make sure what it said. So, you know, that's a clear direction from the California Department of Insurance. It's not specifically to Paul Revere, but it's to other insurers. And so that's what we can see from the California Department of Insurance. And then, finally, to wrap things up, I wanted to give you the cites to our discussion of the old letter. We're on the record at 47 and 48. It only goes through the factual piece of it because there was no discussion of waiver and estoppel because you guys may recall that waiver and estoppel wasn't raised until the reply, and we did not raise it in our opposition. They had no reason to appropriately raise it in the reply. Unless your honors have any more questions, thank you very much, and I apologize for going over. Thank you. Thank you. Mr. Riley, Mr. McGuire, I appreciate your presentations here today. The case of Leanne Albers v. Paul Revere Insurance Group is now submitted.
judges: MURGUIA, FRIEDLAND, BENNETT